UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONICS FOR IMAGING, INC., <br> Plaintiff, <br> v. <br> RAH COLOR TECHNOLOGIES LLC, <br> Defendant. | Case No. 18-cv-01612-WHO <br><br> **ORDER GRANTING MOTION TO DISMISS** <br> Re: Dkt. No. 21, 30 |

## INTRODUCTION

Plaintiff Electronics for Imaging, Inc. ("EFI") filed this action against defendant RAH Color Technologies, LLC ("RAH"), seeking a declaratory judgment of non-infringement of four patents held by RAH. RAH moves to dismiss for lack of personal jurisdiction in California. EFI contends that it has alleged sufficient facts to establish jurisdiction, but if not, it asks for leave to take jurisdictional discovery. But RAH's contacts with EFI were non-existent before EFI filed this lawsuit and its contacts in California have been glancing at best. For the reasons discussed below, RAH's motion is GRANTED and EFI's request for jurisdictional discovery is DENIED.

## BACKGROUND

I. **FACTUAL BACKGROUND**

EFI is a Delaware corporation with its principal place of business in Fremont, California. First Amended Complaint ("FAC") ¶ 2 (Dkt. No. 18). It develops technologies "for the manufacturing of signage, packaging, textiles, ceramic tiles, and personalized documents, with a wide range of printers, inks, digital front ends, and a comprehensive business and production workflow suite." *Id.* RAH is a Virginia limited liability company with its principal place of

business in Alexandra, Virginia. Declaration of Richard A. Holub ("Holub Decl.") ¶ 3 (Dkt. No. 21-1). RAH is a non-practicing entity that licenses and enforces the patents of its sole member, Dr. Richard Holub. FAC ¶ 4; Holub Decl.¶ 4. Holub developed RAH's patents in the 1990s, and the patents "are generally directed towards the field of color management, or the use of computers and other equipment to control how colors are presented on both displays and printers." Holub Decl. ¶ 9.

The record regarding RAH's contacts with EFI and with California is largely undisputed. RAH contends, and EFI does not dispute, that RAH has: (i) never sent a letter regarding any of its patents to EFI, including any notice of infringement; (ii) has never received any communication from EFI regarding the RAH patents; (iii) RAH has never met with EFI, in California or anywhere else; and (iv) never communicated in any way with EFI. *Id*. ¶ 13.

With respect to communications about its patents more generally, RAH admits it has sent dozens of infringement notice letters to companies over the past 10 years, but only three were sent to companies based in California. *Id*. ¶ 14. It has had dozens of in-person meetings regarding its patents "outside of the litigation context," but only three of those meetings took place in California (two with Adobe and one with another party). *Id*. ¶ 15.

RAH admits it has entered licensing agreements for Holub's patents with 26 companies, including three California companies. Holub Decl. ¶ 10. It describes two of those California licenses as part of its 13 "larger" agreements with manufacturers and one of those licenses as part of its 13 "smaller" agreements for "end users" of color management technology. *Id*.[1] All but one of the license agreements involved lump sum payments for non-exclusive licenses. *Id*.[2] "[N]one of the license agreements allows RAH Color Technologies to monitor, control, or restrict the activities of the licensee." *Id*.[3]

---

[1] HP is the only California-based company RAH identifies as having secured a license from it. *Id*. ¶ 16. The only in-person meeting between RAH and HP happened in Spain. *Id*. ¶ 16. The identities of the other two licensees are not disclosed.

[2] The one exception was a license that included an exercised option for a second lump sum payment to extend the term of the license. *Id*.

[3] According to RAH's proposed stipulation to avoid jurisdictional discovery, only one of its

2

The three California licenses count for 20% - 25% of the revenue RAH has generated from its licensing. *See* Declaration of Gregory Cordrey (Dkt. No. 27-1) ¶ 3 (citing email from RAH).[4] According to RAH—but not supported by a citation to any declaration or other evidence—none of the California licenses "mention EFI," the two larger agreements license the manufacturers' own products, and the third license covers only the end-user's in-house activities. Reply at 4 (Dkt. No. 28).

RAH has filed at least 10 lawsuits to enforce its patents. None of those cases have been filed in California, and none have been filed in Virginia, where RAH is located. Holub Decl. ¶ 12; Declaration of Gregory Cordrey (Dkt. No. 27-1) ¶ 4.[5]

The particular lawsuits that EFI and RAH focus on in support of and in response to the pending motion are as follows. RAH filed a lawsuit against Adobe in the Northern District of Illinois. Declaration of Irwin Park (Dkt. No. 21-2) ¶ 5. That lawsuit was recently transferred to the Northern District of California, based on Adobe's motion under 28 U.S.C. § 1404(a). Cordrey Decl., Ex. 1. However, all of the accused products in the Adobe suit are made by Adobe; no EFI products are accused in that lawsuit. Park Decl. ¶ 5.[6]

RAH brought an action against Ricoh in the Eastern District of Pennsylvania. Holub Decl. ¶ 18. RAH admits that in connection with that litigation there was one meeting held in California (for the convenience of counsel), but the parties met multiple times in New York and settled the case in Chicago. *Id*. ¶ 18. EFI alleges that RAH's suit against Ricoh was based in part on infringement by EFI products, and that EFI was notified of those allegations by Ricoh. FAC ¶¶

---

licenses designated California as the venue to resolve disputes over the license. Dkt. No. 23-3 ¶ 6.

[4] EFI notes that in RAH's proposed jurisdictional facts stipulation, RAH indicated that 25% of its licensing revenue came from California-based licenses. Cordrey Decl. ¶ 3; Dkt. No. 23-3 ¶ 7.

[5] RAH has also filed a patent infringement lawsuit against Quad/Graphics, Inc. That suit is pending in the Eastern District of Wisconsin. Park Decl. ¶ 3. There are no California-based connections alleged in connection with that suit.

[6] EFI points to the dozens of communications directed to California as part of RAH's pre-litigation and post-litigation communications with Adobe, relying on the discussion of those communications as described in RAH's *Adobe* complaint. Park Decl., Ex 1, Adobe Complaint ¶¶ 27-38.

3

20-26.

RAH's action against Seiko-Epson was brought in the Western District of New York. *RAH Color Technologies LLC v. Seiko Espon Corp.*, et al., No. 10-cv-06710 (W.D.N.Y. Dec. 21, 2010). Holub Decl. ¶ 17. RAH admits to having one meeting in California regarding that litigation, but only for the convenience of Seiko-Epson's Japanese-based clients and that company's California-based counsel. *Id.* EFI asserts that in connection with this patent litigation, RAH "presumably" secured licenses with California-based U.S. Epson, Inc. and Epson American, Inc. Oppo. at 15. But any such licenses (to the extent they exist) would be covered by RAH's admission of licenses with California-based companies.[7]

Finally, RAH filed an infringement action against Xerox, also in the Northern District of Illinois, and all of the pre-litigation correspondence was directed to and from Connecticut and New York. Holub Decl. ¶ 19.[8] However, for the convenience of RAH and its counsel and counsel for Xerox (who was based in California), RAH and its counsel held one meeting in San Francisco on a stop-over to Japan. *Id.* ¶ 20.[9]

Despite these largely undisputed facts, EFI insists that it is entitled to additional jurisdictional discovery if I am inclined to disagree with its assertion of specific jurisdiction on the current record. The discovery still sought includes unknown "other letters" – not the three "infringement notices" that RAH admits it has sent into California – as well as emails and telephone calls with individuals or companies based in California. Oppo. at 5. EFI contends that "presumably" there were numerous communications with HP (with whom RAH admits it entered

---

[7] EFI asserts that there "presumably" must have been communications sent by RAH to California-based U.S. Epson, Inc. and Epson America, Inc. related to RAH's lawsuit against Epson Japan. Oppo. at 14-15. But EFI does not explain why that is "presumably" so or cite to public records or records from the underlying patent litigation demonstrating why it would be.

[8] While RAH contends that post-lawsuit inception "communications" with Xerox's California-based counsel are significant to jurisdiction, they are not. RAH had no control or expectation over *where* Xerox would hire its counsel.

[9] In its opposition, EFI states that RAH's licensing and enforcement activities include at least nine in-person meetings in California. Oppo. at 14. But RAH's proposed stipulation (Dkt. No. 23-3) and the Holub Declaration detail the same six meetings that took place in California.

4

a license) and with U.S. Epson, Inc. as well as Epson America, Inc. concerning its litigation against Epson Japan.

## II. PROCEDURAL BACKGROUND

On March 14, 2018, EFI filed this declaratory action, seeking a declaratory judgment of non-infringement of U.S. Patent Nos. 6,995,870 (the '870 patent), 7,729,008 (the '008 patent), 7,312,897 (the '897 patent) and 8,760,704 (the '704 patent). After RAH filed its motion to dismiss, a discovery dispute arose concerning whether RAH was required to provide jurisdictional discovery sought by EFI. Dkt. No. 23. EFI requested that RAH stipulate to jurisdictional discovery consisting of four interrogatories and seven requests for production. Joint Discovery Letter Brief, Ex. A (Dkt. No. 23-1).[10]

Rather than provide written responses to the discovery that EFI requested, RAH offered a stipulation detailing its contacts with California companies, including information about its three licenses agreements with California companies, how much of RAH's revenue is derived from its licenses with California companies, and the travels of Holub and his attorney to California. *Id.*, Ex. C (Dkt. No. 23-3). Because EFI did not believe that RAH's stipulation was sufficient, the parties filed a joint statement concerning EFI's requested discovery, requesting resolution of the parties' discovery dispute. I denied EFI's request for jurisdictional discovery because EFI failed to show why RAH's proffers with respect to jurisdictional facts were insufficient. Order Denying Request for Jurisdictional Discovery (Dkt. No. 25).[11]

---

[10] The interrogatories sought information on licenses or other agreements RAH had entered into with California companies, including whether the agreements had California choice of venue or law; licensing revenues, including revenues from companies based in California; performance of work by RAH or its agents in California; and lawsuits in California. The requests for production sought documents and evidence of communications regarding the same topics, as well as additional information about sources of income generated in and property rights located in California. Dkt. No. 23-1.

[11] I also denied the request because, "Plaintiff does not explain in the Joint Statement 'what is publicly known about [defendant's] business of licensing and enforcing its patent portfolio with entities in California,' see Dkt. No. 23, p. 2 of 7, [or] identify the facts plaintiff asserts may in good faith exist that would provide jurisdiction here." Order Denying Request for Jurisdictional Discovery at 1 (Dkt. No. 25).

RAH now moves to dismiss under Federal Rule of Civil Procedure 12(b)(2),[12] contending that personal jurisdiction cannot be exercised over it in the Northern District of California. EFI disagrees and, at a minimum, seeks jurisdictional discovery to prove its point.

**LEGAL STANDARD**

Rule 12(b)(2) authorizes a defendant to challenge a complaint "for lack of jurisdiction over the person." Because this declaratory judgment action involves only claims of patent noninfringement, Federal Circuit law applies to the jurisdictional issue. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). Where, as here, "the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008).

The three-part test to establish specific jurisdiction is: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). The first two factors correspond with the "minimum contacts" prong of the *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis. *Xilinx, Inc.*, 848 F.3d at 1353 (citing *Inamed*, 249 F.3d at 1360).

For the first factor, it is essential that the defendant had "purposefully availed" itself of the opportunity of conducting activities in the forum state, and for the second factor, there must be assertions that the suit "arises out of" the defendant's contacts with the forum state. *Xilinx, Inc.*, 848 F.3d at 1353. In this context – noninfringement declaratory judgment suits – on the first two prongs, it is appropriate to consider "forum-related activities of the patentee with respect to the

---

[12] RAH also moves to dismiss EFI's FAC under Rule 12(b)(6), arguing that EFI has failed to plead its noninfringement claims with the required specificity. Because I conclude that I do not have personal jurisdiction over RAH, I do not address this basis for dismissal.

6

patents in suit that do not necessarily relate to the particular controversy, such as exclusive licensing" although contacts concerning *other* patents are not relevant. *Xilinx, Inc.*, 848 F.3d at 1353.

As to the third "reasonable and fair" prong, which is addressed after plaintiff has established *a prima facie* case under the first two prongs, courts look to: (i) the burden on defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering fundamental substantive social policies. *Xilinx, Inc.*, 848 F.3d 1355 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The defendant must make a compelling showing under those factors to defeat specific jurisdiction where minimum contacts under the first two prongs has been satisfied. *Id*. at 1356.

## DISCUSSION

I. **SPECIFIC JURISDICTION**

As an initial matter, there is no dispute that RAH did not send a cease-and-desist letter or otherwise contact or meet with EFI. Therefore, to establish personal jurisdiction over RAH, EFI must demonstrate that RAH's contacts with California in order to enforce its patent rights – the *same* patents and rights that are at issue in this suit – are significant enough to meet the purposeful availment and arising out of prongs. None of the contacts asserted by EFI, individually or collectively, is sufficient to establish specific jurisdiction in California.

<u>Activity Directed at California-Based Companies</u>. EFI argues that RAH's "decade-plus" history of enforcement of its patents against California-based companies supports jurisdiction. However, RAH has sent dozens of cease and desist letters, but only three to California companies. Assuming that those cease-and-desist letters asserted infringement of the same patents at issue in this case, they do not demonstrate jurisdiction absent evidence that in connection with its patent enforcement efforts RAH took affirmative steps to do business in California or benefit from the protections of California law. *See, e.g., Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (holding that cease-and-desist letters, even those aimed at a

7

particular declaratory relief plaintiff, "without more, [] are not sufficient to satisfy the requirements of Due Process in declaratory judgment actions.").[13]

RAH has only secured three licenses from California-based companies (two large licenses from manufacturers covering their own products, and one smaller license covering an end-user of non-EFI products). Significantly, those licenses are *not exclusive* and did not provide for any ongoing oversight or other "continued business relations" between RAH and the licensees other than agreement to payments.[14] *See, e.g., Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (noting no personal jurisdiction where the "defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensee's sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income"); *see also Red Wing Shoe Co.,* 148 F.3d at 1361 (noting that "[a]n offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship" and absent evidence of a long-term continuing business relationship, specific jurisdiction is not satisfied). That California-based licenses account for 20-25% of RAH's licensing revenue, again, does not create jurisdiction.

Similarly, that RAH has taken enforcement action against one California-based company, Adobe, does not establish specific jurisdiction because RAH initiated that suit in a different forum. *See, e.g., Adobe Sys. Inc. v. Tejas Research, LLC*., C-14-0868 EMC, 2014 WL 4651654, at *7 (N.D. Cal. Sept. 17, 2014) ("Tejas' enforcement actions against California entities in other states and its non-exclusive licensing agreements with a handful of California entities does not establish

---

[13] The "more" that could subject a patent holder to jurisdiction includes "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent*, 552 F.3d at 1334-1335. EFI relies on *Xilinx Inc. v. Papst Licensing GmbH*, 848 F.3d 1346, 1354 (Fed. Cir. 2017), which is easily distinguished on its facts. There, the patent holder sent numerous cease-and-desist letters to the forum (including one directed to the declaratory relief plaintiff), filed multiple suits in that forum, and also travelled to the forum to discuss the infringement with the plaintiff. *Id*. at 1350, 1357.

[14] EFI cites no authority supporting jurisdiction given that one of RAH's licenses agreed to a California venue *if* disputes arose under the license.

sufficient contacts for the exercise of personal jurisdiction in this matter."); *see also Avocent*, 552 F.3d at 1334 (recognizing that defendant's initiating judicial patent enforcement within other forums cannot supports personal jurisdiction in challenged forum). That the *Adobe* case was subsequently transferred here, over RAH's objection, under 28 U.S.C. § 1404(a), does not implicate the sorts of affirmative acts that can meet the first two prongs of the specific jurisdiction test. *See, e.g.*, *Autonomy, Inc. v. Adiscov, LLC*, C 11-00420 SBA, 2011 WL 2175551, at *4 (N.D. Cal. June 3, 2011) (finding that "that patent litigation commenced outside the forum is not probative of purposeful availment.").[15]

      EFI argues that RAH's admitted communications with California-based counsel for Xerox support jurisdiction. However, even if the Xerox lawsuit might implicate EFI products and even if the communications between RAH and Xerox discuss EFI products, the happenstance location of Xerox's counsel (in California) cannot be pinned to an affirmative choice by RAH to conduct business in California or benefit from California law. *See, e.g., Red Wing*, 148 F.3d at 1359 ("contacts resulting from the 'unilateral activity' of others do not count [in the minimum contacts calculus]" (citing *Burger King*, 471 U.S. at 475 & n. 17)); *see also id.* ("Random, fortuitous, or attenuated contacts do not count in the minimum contacts calculus." (internal quotations omitted)); *cf. Intl. Med. Group, Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 847 (7th Cir. 2002) (attorneys sending correspondence into challenged forum as a result of the plaintiff's actions could not support specific personal jurisdiction). In addition, that one meeting took place between RAH and Xerox, while RAH and its counsel were on a lay-over to Japan for the convenience of the parties and to discuss the Xerox litigation with Xerox and its San Francisco-based counsel does not support jurisdiction.

      Similarly, communications RAH had with Ricoh's San Francisco-based counsel and the one-in person meeting between RAH's counsel and Ricoh's counsel in San Francisco (related to the lawsuit RAH filed in Pennsylvania while RAH's counsel was in town on other business) do not support jurisdiction. The location of counsel hired by Ricoh was not within the control of

---

[15] In addition, while RAH admits to two meetings with Adobe that occurred "outside the context of litigation" those meetings concerned only Adobe products. Holub Decl. ¶ 15.

1  RAH and these fleeting and happenstance contacts in California were not the result of RAH
2  directing any conduct or benefitting from any conduct in California to support jurisdiction. The
3  same holds true for communications with Seiko-Epson's counsel (based in Los Angles) and the
4  one meeting the parties held in Los Angeles for the convenience of representatives of Seiko-Epson
5  from Japan.

6  As a fallback, EFI asserts that RAH has "undoubtedly" sent other, undisclosed
7  communications to California-based companies related to EFI's products. Mot. at 8-9. RAH has
8  detailed its "outside of litigation" *patent enforcement* communications above and those do not
9  establish jurisdiction. RAH has stated under penalty of perjury that it has only sent three cease-
10 and-desist letters to California-based companies. Any other communications are likely to be either
11 related to the three licenses RAH secured from the California companies (which are non-exclusive
12 and do not evidence on-going California connections) or regard the existing litigation which (other
13 than the case against Adobe, recently transferred to this District) are not directed at California-
14 based companies but whose counsel may through no fault of RAH be located in California. These
15 communications do not weigh in favor of finding jurisdiction. In addition, EFI does not provide
16 information, presumably within its knowledge, disclosing the identity of EFI's California-based
17 customers who have been contacted by RAH. If EFI's California customers are complaining to it
18 about RAH's enforcement activities, EFI would likely know; no evidence has been provided by
19 EFI to substantiate this allegation.

20 Activity Directed at EFI Customers. Having no evidence to dispute RAH's factual
21 assertions that RAH has not voluntarily undertaken significant patent enforcement action
22 (litigation, on-going supervision of licensees, entering into exclusive licenses) within California,
23 EFI focuses on activity RAH has allegedly directed at companies based outside of California. In
24 particular, EFI argues that because RAH has actively sought licenses from or sued other
25 companies who are EFI's customers and who used EFI's products, RAH "purposefully directed"
26 harm towards EFI sufficient to confer jurisdiction under the *Calder* effects test. Oppo. at 11
27 (arguing that RAH has undertaken a "campaign of targeting EFI's customers for its enforcement
28 activities based on their use and sale of EFI's products.").

EFI points to infringement letters RAH sent to Konica Minolta and Ricoh in 2014 and infringement actions RAH filed against Quad and Xerox. *See* FAC ¶¶ 18-35. Relying on *Calder v. Jones*, 465 U.S. 783, 790 (1984), EFI contends that "[j]urisdiction over RAH in California is proper based on these activities because RAH understood that by accusing EFI's customers of infringement based on EFI products, the effect would be felt by EFI in California where EFI is headquartered and sells the products RAH accuses of infringement." Oppo. at 11.

I disagree that RAH's enforcement activities against EFI's customers satisfies the *Calder* "effects" test. As an initial mater, it is questionable whether a good-faith assertion of infringement is the type of intentional act that triggers the consideration of the "effects" test in *Calder*. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) (the "proper focus" for due process analysis under *Calder* is "in intentional-tort cases"). There are no allegations here that RAH engaged in any tortious conduct. In addition, that EFI is based in California is not sufficient even under *Calder* to show sufficient contacts to support jurisdiction. *See Walden*, 571 U.S. at 298 ("the relationship among the defendant, the forum, and the litigation" must be the focus, and "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

Assuming the effects test could apply in this context, EFI presumably has within its possession *facts* to support this argument. It has not provided any. For example, if EFI was forced to indemnify Konica Minolta, Ricoh, Quad, or Xerox as a result of those companies' use of EFI's products and EFI thereby suffered harm from RAH's enforcement efforts, EFI could have attested to that. Similarly, if EFI's sales of products to specific customers have been harmed by RAH's enforcement efforts, EFI could have demonstrated that. EFI has proffered no evidence suggesting that RAH knowingly and intentionally targeted customers with the intent to cause harm to EFI in order to support of its prima facie case of jurisdiction.[16]

Finally, EFI argues in passing that RAH is subject to general jurisdiction, relying

---

[16] Because EFI has not met its prima facie burden, I do not address whether exercise of specific jurisdiction would be fair and reasonable under the third prong of the specific jurisdiction test. *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003) ("While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable.").

11

exclusively on the same contacts it relies on to support specific jurisdiction. Oppo. at 18. Those facts are not sufficient to establish specific jurisdiction and, therefore, cannot be sufficient to establish the broader requirements of general jurisdiction. Finally, that 20-25% of RAH's licensing revenue is generated in California, standing alone, is not sufficient to demonstrate general jurisdiction. *See Xilinx, Inc. v. Papst Licensing GMBH*, 113 F. Supp. 3d 1027, 1036 (N.D. Cal. 2015*), rev'd on other grounds*, 848 F.3d 1346 (Fed. Cir. 2017) ("Merely conducting business in California from a home base in Germany is not 'exceptional,' even when that business generates substantial revenue.").

Analyzed separately, or considered together, EFI's arguments and suppositions do not amount to a showing that RAH has the requisite "minimum contacts" to California to justify my exercise of personal jurisdiction over this case.

II. **JURISDICTIONAL DISCOVERY**

In its opposition, EFI requests jurisdictional discovery if I find that it has not shown sufficient facts to support personal jurisdiction. Oppo. at 18-22. Ninth Circuit law controls this request for discovery. *See Patent Rights Protection Grp. LLC v. Video Gaming Techs., Inc*., 603 F.3d 1364, 1371 (Fed. Cir. 2010) ("We review the district court's denial of discovery, an issue not unique to patent law, for abuse of discretion, applying the law of the regional circuit"). In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc*., 788 F.2d 535, 540 (9th Cir. 1986)). But a court can deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Am. W. Airlines, Inc. v. GPA Group, Ltd*., 877 F.2d 793, 801 (9th Cir. 1989) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406, 430 n. 24 (9th Cir. 1977)), or where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

EFI argues that I should permit jurisdictional discovery because it "has good reason to

believe that several 'known unknown' jurisdictional facts exist." Oppo. at 19. EFI identifies six topics which it believes would confirm that personal jurisdiction can be exercised over RAH in California: (1) to confirm "dozens of in-person meetings within the context of litigation or other than those already disclosed 'outside the context of litigation'"; (2) to confirm the existence of "hundreds of communications with individuals and companies based in California over RAH's 'decade-plus' of admitted enforcement activity"; (3) to confirm that "that RAH consented to jurisdiction in California in at least one license agreement regarding one or more of RAH's patents, presumably with a California-based company"; (4) to confirm "[p]urported license agreements with Hewlett Packard, U.S. Epson, Inc. and Epson America, Inc., and two other unknown California-based companies"; (5) to confirm that "approximately 25%" of RAH's licensing revenue 'was paid by companies having a principal place of business or incorporation in California,' presumably in connection with EFI products"; and (6) to confirm "at least one meeting with unidentified party 'outside the context of litigation.'" *Id.* at 19-20.

Many of the facts identified above have been addressed by RAH's declarations and not otherwise contested by EFI. Holub identifies in his declaration the cease-and-desist letters sent to California companies and the scope of the licenses secured. Holub Decl. ¶¶ 10, 14. The number of letters following up on those cease-and-desist letters and the number of letters involved in negotiating the licenses would not change the jurisdictional analysis. Holub also identifies the number of in-person meetings he or his counsel have had in California regarding patent enforcement. Holub Decl. ¶¶ 15, 17, 18, 20. Additional discovery would uncover nothing new on those points. Indeed, a number of those facts have been admitted by RAH or assumed to be true by me; they do not alter the analysis. *See supra generally* (assuming 20-25% of RAH's licensing revenue comes from California-based companies and one license consented to California jurisdiction in the event of a dispute).

EFI did not directly challenge the facts as stated in the Holub declaration (and the proffered declaration in lieu of discovery) and does not provide a declaration of its own to point out contrary facts or to show that there is a basis to contest them. EFI's request for jurisdictional discovery is DENIED.

13

**CONCLUSION**

For the reasons detailed above, EFI's request for jurisdictional discovery is DENIED and RAH's motion to dismiss for lack of personal jurisdiction is GRANTED. I am inclined to transfer this case to the Eastern District of Virginia for further proceedings, because there appears to be a genuine dispute between the parties that this Order on jurisdiction in California does not resolve. RAH is located in Alexandria, Virginia. EFI shall file a notice no later than November 2, 2018 indicating whether it would prefer instead that I simply dismiss the case. If either party contends that a venue other than the Eastern District of Virginia is more appropriate, it may so indicate by November 2, 2018.[17]

**IT IS SO ORDERED.**

Dated: October 24, 2018

William H. Orrick
United States District Judge

---

[17] Given my conclusions regarding personal jurisdiction in this action, the STIPULATION and Proposed Order Selecting ADR Process (Dkt. No. 30) is MOOT.